ALVIS T. WEAVER, EMPLOYEE, PLAINTIFF v. SWEDISH IMPORTS MAINTE-NANCE, INC., EMPLOYER, RELIANCE INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 363A86

(Filed 7 April 1987)

1. **Master and Servant § 77.1— workers' compensation—change from temporary total to permanent total disability—award for change of condition**

   Claimant was entitled to a modification of award for change of condition pursuant to N.C.G.S. § 97-47 because of a change of his condition from temporary total disability to permanent and total disability where claimant was initially awarded compensation for temporary total disability as a result of a 12 April 1979 heart attack at work; claimant suffered three subsequent heart attacks and has been permanently and totally disabled since 1 June 1981; and the Industrial Commission found that claimant's total incapacity to earn wages was caused by a combination of the cumulative damage to the heart muscle resulting from his initial compensable heart attack and his three subsequent heart attacks. Claimant was not required to establish a causal relationship between the initial compensable heart attack and the subsequent heart attacks in order to receive an award modification for change of condition.

2. **Master and Servant § 69— workers' compensation—total disability from compensable and noncompensable heart attacks—apportionment of award**

   Where claimant was permanently and totally disabled because of damage to his heart muscle resulting from the combined effects of a compensable heart attack, three subsequent heart attacks, and the continued underlying coronary occlusions that cause angina, and the heart attacks and other infirmities suffered by claimant are not included in the schedule set out in N.C.G.S. § 97-31, claimant is entitled to compensation under the total incapacity statute, N.C.G.S. § 97-29, rather than under the partial incapacity statute, N.C.G.S. § 97-30. However, since claimant's permanent and total disability was only partially a result of the initial compensable heart attack, the award must be

apportioned to reflect the extent to which claimant's permanent total disability was caused by the compensable heart attack.

Justice MEYER dissenting.

APPEAL of right by defendants pursuant to N.C.G.S. § 7A-30 (2) from a decision of a divided panel of the Court of Appeals, reported at 80 N.C. App. 432, 343 S.E. 2d 205 (1986), affirming the opinion and award of the Industrial Commission filed on 26 March 1985, which reversed the opinion and award of Deputy Commissioner Elizabeth McCrodden filed on 28 July 1984.

*E. C. Harris, for plaintiff-appellee.*

*Newsom, Graham, Hedrick, Bryson & Kennon, by William P. Daniell, for defendant-appellants.*

FRYE, Justice.

In this workers' compensation case we must determine whether the Court of Appeals correctly affirmed the Industrial Commission's decision that: (1) claimant had suffered a change in condition entitling him to recover pursuant to N.C.G.S. § 97-47, and (2) claimant was entitled to compensation for permanent partial disability pursuant to N.C.G.S. § 97-30. For the reasons stated herein, we find that: (1) claimant is entitled to an award for change in condition pursuant to N.C.G.S. § 97-47, (2) claimant is entitled to compensation under N.C.G.S. § 97-29 rather than N.C.G.S. § 97-30 and (3) the Industrial Commission's findings of fact are insufficient to determine the percentage of disability compensable under N.C.G.S. § 97-29.

On 12 April 1979, claimant suffered a compensable myocardial infarction ("heart attack") at work while attempting to replace a wheel on an automobile. During claimant's hospitalization following the 12 April 1979 heart attack, he suffered a second heart attack. Compensation was awarded claimant for temporary total disability pursuant to N.C.G.S. § 97-29 from 13 April 1979 to 15 July 1979. The award was upheld by the Court of Appeals. *Weaver v. Swedish Imports Maintenance, Inc.*, 61 N.C. App. 662, 301 S.E. 2d 736 (1983). Nine months after his 12 April 1979 heart attack, claimant began to experience angina episodes, and in August 1980, while walking in a flea market, he suffered another heart attack. After a period of recovery, claimant returned to

work. Then, in June 1981, while sleeping at home, claimant suffered another heart attack. Claimant has not returned to work since the June 1981 attack and is now totally disabled as a result of the cumulative damage to the heart muscle resulting from the four heart attacks and the continued underlying coronary artery disease which existed prior to 12 April 1979. The last payment pursuant to the initial award of compensation (under N.C.G.S. § 97-29) was made on or about 13 September 1983, several months after certification of the opinion of the Court of Appeals affirming the award.

On 22 September 1983 claimant filed a petition alleging that subsequent to the initial heart attack in April 1979 he had suffered a change of condition and that he had been totally disabled since 1 June 1981. The Industrial Commission, after reviewing the evidence at a hearing held before a deputy commissioner, concluded that claimant had been permanently and totally disabled since 1 June 1981, partially as a result of his compensable heart attack on 12 April 1979, and that claimant was entitled to benefits for permanent partial disability under N.C.G.S. § 97-30. Chairman Stephenson dissented on grounds that there was no expert medical testimony that the original heart attack "significantly contributed"[1] to claimant's present disability or that the original heart attack contributed to the subsequent attacks. Defendants gave notice of appeal to the Court of Appeals which affirmed in a split decision.

---

1. Chairman Stephenson's dissenting opinion suggests that *Rutledge v. Tultex*, 308 N.C. 85, 301 S.E. 2d 359 (1983), if applicable in this case, requires claimant to show that his original compensable injury "significantly contributed to" claimant's present disability. The "significant contribution" test articulated by this Court in *Rutledge* does not apply to the case *sub judice*. The issue in *Rutledge* was whether chronic obstructive lung disease (the sole cause of claimant's disability) was an occupational disease. This Court held that the chronic obstructive lung disease was an occupational disease where the claimant's work-related exposure to cotton dust "significantly contributed" to the disease's development. The instant case does not involve a question of whether the disability-causing injury was work related. Claimant's petition for a modification of award in this case is based on his initial compensable heart attack and neither party contends here that this initial heart attack was not work related. Neither is there any evidence or claim in this case that the subsequent heart attacks were causally related to the first heart attack so as to make the subsequent attacks themselves compensable.

## I.

[1] We must first decide whether claimant is entitled to a modification of award on grounds of a change of condition pursuant to N.C.G.S. § 97-47. The Industrial Commission concluded in an opinion affirmed by the Court of Appeals that claimant was entitled to a modification of award because of a change in his condition from "temporary total disability" to permanent partial disability. In support of its conclusion, the Commission made, *inter alia*, the following finding of fact.

> 9. Plaintiff's total incapacity to earn wages was caused by a combination of the cumulative damage to the heart muscle resulting from his initial compensable heart attack, his three subsequent attacks and the continued underlying coronary occlusions that also cause angina.

It is well settled in North Carolina that, except as to questions of jurisdiction, the findings of fact of the Industrial Commission are conclusive upon appeal if supported by competent evidence. *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981). Finding of fact number 9 was clearly supported by competent evidence. Mr. Weaver's present physician, Dr. Hindman, a recognized medical expert certified in internal medicine and cardiovascular diseases, testified that in May of 1983 Mr. Weaver was a poor surgical candidate because of "moderately severe damage to the heart muscle, and cumulative damage from the three previous heart attacks . . . ." According to Hindman, no effective therapy existed in 1984 to "restore the significant damage done to [Weaver's] heart muscle in the three heart attacks."

Dr. Hindman testified further that it is very clear that there has been a change in Mr. Weaver's cardiac condition since July of 1979. Hindman stated that he "would classify the change in [Weaver's] condition as being substantial in that he has had two subsequent heart attacks and a significant amount of damage *added to* the damage from his first heart attack." (Emphasis added.)

In response to questioning by defendants' counsel, Dr. Hindman indicated that Weaver actually suffered four heart attacks. He explained that since the heart muscle does not regenerate

itself, the damage to Mr. Weaver's heart caused by the heart attacks was cumulative. According to Dr. Hindman, the "results of the damage occurring from those heart attacks is that [Mr. Weaver's] left ventricle is no longer able to pump blood as efficiently as it could prior to the date the damage occurred." Dr. Hindman then gave the following testimony in conclusion:

> It is my opinion that Mr. Weaver's present disability is a combination of the cumulative damage of the heart muscle and the continued underlying coronary occlusions that still cause him angina.

Whether the facts as found by the Commission amount to a change of condition pursuant to N.C.G.S. § 97-47, however, is a question of law and thus properly reviewable by this Court. *Pratt v. Upholstery Co.*, 252 N.C. 716, 115 S.E. 2d 27 (1960). The statute, in pertinent part, provides as follows:

> Change of condition; modification of award.
>
> Upon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded . . . . No such review shall affect such award as regards any moneys paid but no such review shall be made after two years from the date of the last payment of compensation pursuant to an award under this Article, except that in cases in which only medical or other treatment bills are paid, no such review shall be made after 12 months from the date of the last payment of bills for medical or other treatment, paid pursuant to this Article.

N.C.G.S. § 97-47 (1985).

The Industrial Commission's authority under N.C.G.S. § 97-47 is limited to the review of prior awards; thus the statute is inapplicable unless there has been a previous final award. *Watkins v. Motor Lines*, 279 N.C. 132, 181 S.E. 2d 588 (1971). A final award was issued by the Commission in this case and affirmed by the Court of Appeals. *Weaver v. Swedish Imports Maintenance, Inc.*, 61 N.C. App. 662, 301 S.E. 2d 736.

A change of condition " 'refers to conditions different from those existent when the award was made' . . . [citations omit-

ted]." *Pratt v. Upholstery Co.*, 252 N.C. 716, 722, 115 S.E. 2d 27, 33-34. For example, a change in the degree of disability may constitute a change of condition. *McLean v. Roadway Express, Inc.*, 307 N.C. 99, 296 S.E. 2d 456 (1982) (following a back operation, claimant's permanent partial disability changed from thirty percent to fifty percent). Similarly, an improvement in earning ability may be a change of condition as contemplated by the statute, *Smith v. Swift & Co.*, 212 N.C. 608, 194 S.E. 106 (1937)[2] (claimant was granted an award for permanent partial disability, and thereafter obtained employment and received a salary almost equal to salary before injury). *See also Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 345 S.E. 2d 374 (1986). Also, this Court has stated that

> 'Where the harmful consequences of an injury are unknown when the amount of compensation to be paid has been determined by agreement but subsequently develops, the amount of compensation to which the employee is entitled can be determined within the statutory period for reopening. It is a "change of condition" as the term is used in the statute.' *State v. Red Cross*, 245 N.C. 116, 95 S.E. 2d 559 (1956).

*Watkins v. Motor Lines*, 279 N.C. 132, 138, 181 S.E. 2d 588, 592-93.

As a result of the disability suffered in the 12 April 1979 heart attack, claimant was initially awarded compensation for temporary total disability from 13 April 1979 to 15 July 1979. After apparent recovery, claimant returned to work. In August 1980, claimant suffered another heart attack while walking through a flea market. Again, claimant returned to work. Then on 1 June 1981, while sleeping at home, claimant suffered yet another heart attack. On 22 September 1983 claimant applied to the Industrial Commission for a modification of award based on a change in condition. Thus the claimant's application for review was made within two years of the last payment pursuant to the initial award on 13 September 1983 as required by N.C.G.S. § 97-47. The Industrial Commission found him totally and permanently disabled. Therefore, claimant's condition changed from temporary total disability on 13 April 1979 to total and perma-

---

2. This case was decided under § 46 of the North Carolina Workmen's Compensation Act (N.C. Code 8081 [bbb] (1935) ), a predecessor to N.C.G.S. § 97-47.

Weaver v. Swedish Imports Maintenance, Inc.

nent disability following the 1 June 1981 heart attack. We find that this is a change in condition within the meaning of N.C.G.S. § 97-47.[3] Since claimant here suffered a change in condition and made a timely request for a modification of award under N.C.G.S. § 97-47, we agree with the decision of the Court of Appeals that claimant is entitled to a modification of award for a change in condition.

## II.

[2] Having determined that claimant suffered a change in condition under N.C.G.S. § 97-47 from temporary total disability to total and permanent disability, we next consider whether the Industrial Commission properly awarded claimant compensation pursuant to the partial incapacity statute, N.C.G.S. § 97-30. The statute, in pertinent part, provides as follows:

> Partial Incapacity—Except as otherwise provided in G.S. 97-31, where the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such disability, a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than the amount established annually to be effective October 1 as provided in G.S. 97-29 a week, and in no case shall the period covered by such compensation be greater than 300 weeks from the date of injury . . . .

N.C.G.S. § 97-30 (1985).

In *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458, an occupational disease case, the Industrial Commission

---

3. Defendants contend that claimant may not receive an award modification for a change in condition unless he establishes a causal relationship between the initial compensable heart attack and the subsequent heart attacks. We agree however with the Court of Appeals' rejection of this contention. *Weaver v. Swedish Imports Maintenance, Inc.*, 80 N.C. App. 432, 343 S.E. 2d 205. Claimant in the instant case is not seeking compensation for the subsequent heart attacks. Instead he is seeking compensation for disability suffered as a result of his initial compensable heart attack. Thus claimant is not required to establish a causal relationship between the initial and subsequent heart attacks.

awarded claimant fifty-five percent partial disability under N.C.G.S. § 97-30. This Court held that:

> The findings of the Commission are supported by competent evidence and are therefore conclusive. They establish the necessary causal relationship of only 55 percent of [claimant's] inability to work and earn wages. This was the extent of her disability *resulting from* an occupational disease. The incapacity for work resulting from the occupational disease is therefore partial and compensation should be awarded pursuant to G.S. 97-30. The remaining 45 percent of her incapacity is not the responsibility of nor a compensation obligation of her employer under our Workers' Compensation Act which compels industry 'to take care of its own wreckage.'

*Id.* at 14, 282 S.E. 2d at 467-68 (citations omitted).

In another occupational disease case, *Hansel v. Sherman Textiles,* 304 N.C. 44, 283 S.E. 2d 101 (1981), the Industrial Commission found that the claimant's permanent disability was caused by both byssinosis resulting from exposure to cotton dust during the course of employment and asthma. The claimant was awarded full benefits for permanent partial disability pursuant to N.C.G.S. § 97-30. This Court, however, remanded the case for determination of the percentage of the claimant's disability which was due to her occupational disease. The holdings in the much debated *Morrison* and *Hansel* cases were clearly explained in *Rutledge v. Tultex,* 308 N.C. 85, 301 S.E. 2d 359 (1983). The majority and dissenting opinions in *Rutledge* agreed that:

> [B]oth *Morrison* and *Hansel* hold that when byssinosis is the occupational disease in question and causes a worker to be partially physically disabled, and other infirmities, acting independently of and not aggravated by the byssinosis, also cause the worker to be partially physically disabled, the worker is entitled to compensation for so much of the incapacity for work as is related to the physical disability caused by the occupational disease.

*Id.* at 121, 301 S.E. 2d at 381.

This Court, in *Rutledge,* held that where claimant's work-related exposure to cotton dust significantly contributed to her chronic obstructive lung disease, that disease was an occupational

disease within the meaning of the applicable provision of our Workers' Compensation Act and claimant was therefore entitled to compensation for total disability caused thereby. This result was possible notwithstanding the fact that the inhalation of cigarette smoke may have also significantly contributed to the development of the disease. Likewise, in *Peoples v. Cone Mills*, 316 N.C. 426, 342 S.E. 2d 798 (1986), we held that a claimant was entitled to compensation for total disability where the occupational disease, when combined with claimant's age, education and work experience, resulted in claimant's total inability to work. Plaintiff was awarded compensation under the total incapacity statute, N.C.G.S. § 97-29, which provides in pertinent part as follows:

> Compensation rates for total incapacity.

> Except as hereinafter otherwise provided, where the incapacity for work resulting from the injury is total, the employer shall pay or cause to be paid, as hereinafter provided, to the injured employee during such total disability a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of his average weekly wages, but not more than the amount established annually to be effective October 1 as provided herein, nor less than thirty dollars ($30.00) per week.

N.C.G.S. § 97-29 (1985).

The Court in *Peoples* reasoned that the fact:

> [t]hat plaintiff can perform only sedentary work does not in itself preclude the Commission from making an award for total disability if it finds upon supporting evidence that plaintiff because of other preexisting limitations is not qualified to perform the kind of sedentary jobs that might be available in the marketplace. If preexisting conditions such as the employee's age, education and work experience are such that an injury causes the employee a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the actual incapacity he or she suffers, and not for the degree of disability which would be suffered by someone younger or who possesses superior education or work experience. *Little v. Food Service*, 295 N.C. 527, 532, 246 S.E. 2d 743, 746 (1978).

*Peoples v. Cone Mills*, 316 N.C. 426, 441, 342 S.E. 2d 798, 808.

The facts of the instant case do not fit neatly into the factual situations of any of the above referenced cases, all of which involve occupational diseases. Our research has disclosed no appellate decision in this state similar to the case *sub judice* where the claim for benefits is based on claimant's total disability resulting from the combination of a compensable primary injury and subsequent injuries not caused, accelerated or aggravated by the primary injury. Accordingly, we must determine whether claimant is entitled to compensation under N.C.G.S. § 97-30, the partial incapacity statute or under N.C.G.S. § 97-29, the total incapacity statute.

The Court of Appeals held that the "[Industrial] Commission's conclusion that the claimant was totally and permanently disabled 'partially as a result' of his compensable injury supports an award for permanent partial disability pursuant to N.C.G.S. 97-30."

We believe, however, that N.C.G.S. § 97-30 was intended by the legislature to apply only in those situations where claimant's incapacity is partial. Thus, we cannot agree with the Court of Appeals' decision that claimant's total incapacity for work is compensable under the partial incapacity statute, N.C.G.S. § 97-30. Instead, we find that claimant's condition of total incapacity is compensable under the total incapacity statute, N.C.G.S. § 97-29.

This Court, in *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978), addressed the question of the applicability of N.C.G.S. § 97-29 and N.C.G.S. § 97-30. Like the Court in *Little*:

We think it appropriate to emphasize again that the criterion for compensation in cases covered by G.S. 97-29 or -30 is the extent of the claimant's 'incapacity for work. . . .'

[Thus] the ultimate question [is]: To what extent is plaintiff now able to earn, in the same or any other employment, the wages she was receiving at the time of her injury? If she is unable to work and earn *any* wages, she is totally disabled. G.S. 97-2(9). In that event, unless all her injuries are included in the schedule set out in G.S. 97-31, she is entitled to an award for permanent total disability under G.S. 97-29.

Weaver v. Swedish Imports Maintenance, Inc.

If she is able to work and earn *some* wages, but less than she was receiving at the time of her injury, she is partially disabled. G.S. 97-2(9). In that event she is entitled to an award under G.S. 97-31 for such of her injuries as are listed in that section, and to an additional award under G.S. 97-30 for the impairment of wage earning capacity which is caused by any injuries *not listed* in the schedule in G.S. 97-31.

*Id.* at 533, 246 S.E. 2d at 747.

The Commission in the instant case found as a fact that the claimant was unable to earn any wages because of damage to his heart muscle resulting from the combined effects of four heart attacks and the continued underlying coronary occlusions that cause angina.[4] Thus claimant's disability is total, not partial. The heart attacks and other infirmities suffered by claimant are not included in the schedule set out in N.C.G.S. § 97-31. Since claimant is totally disabled as a result of injuries not included in the N.C.G.S. § 97-31 schedule, claimant is entitled to an award for total disability under N.C.G.S. § 97-29. *See Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743.

This Court however has repeatedly emphasized that the Workers' Compensation Act was never intended to be a general accident and health insurance policy. The primary purpose of the Workers' Compensation Act is to "compel industry to take care of its own wreckage." *Barber v. Minges*, 223 N.C. 213, 216, 25 S.E. 2d 837, 839 (1943). *See also Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458. While N.C.G.S. § 97-29 makes no express provision for apportionment of an award, there is nothing in the Act which prohibits the apportionment of an award where, as here, only a portion of claimant's total disability is caused or contributed to by the compensable injury. Here it is clear that claimant's permanent and total disability was only partially a result of the initial compensable heart attack. We therefore hold that the award must be apportioned to reflect the extent to which claim-

4. Finding of Fact Number 9 provides that:

"Plaintiff's total incapacity to earn wages was caused by a combination of the cumulative damage to the heart muscle resulting from his initial compensable heart attack, his three subsequent attacks and the continued underlying coronary occlusions that also cause angina."

ant's permanent total disability was caused by the compensable heart attack.

The Commission must first determine the amount of weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of claimant's average weekly wages in accordance with the requirements set forth in N.C.G.S. § 97-29. Claimant should then be awarded only that portion of this amount which is equal to the percentage of the permanent total disability caused by the work-related heart attack. Since the Industrial Commission did not determine the extent to which the claimant's permanent and total disability was caused by the compensable heart attack of 12 April 1979, it is impossible to determine the portion of claimant's total disability which is properly compensable under N.C.G.S. § 97-29.

We therefore remand the case to the Court of Appeals for further remand to the Industrial Commission to determine the extent to which claimant's permanent and total disability resulted from the compensable heart attack on 12 April 1979 and to issue its award accordingly.

Affirmed in part; reversed in part; and remanded.

Justice MEYER dissenting.

As I understand the law governing the factual situation before us, in order for the plaintiff to recover compensation for a change of condition, the plaintiff has the burden of showing that the subsequent heart attacks which resulted in total disability were the direct and natural result of the original heart attack. Professor Larson, in his treatise on workers' compensation law, states:

> The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is *the direct and natural result of the compensable primary injury.*

1 A. Larson, *The Law of Workmen's Compensation* § 13.11, at 3-348.91 (1976) (emphasis added). In discussing the range of compensable consequences flowing from a primary compensable injury, Professor Larson says this:

> The issue in all of these cases is exclusively the medical issue of causal connection between the primary injury and the subsequent medical complications. . . . [D]enials of compensation in this category have invariably been the result of a conclusion that the requisite medical causal connection did not exist.

1 A. Larson, *Workmen's Compensation Law* § 13.11(a), at 3-358 to 3-359 (1976) (footnotes omitted). *See Starr v. Paper Company*, 8 N.C. App. 604, 175 S.E. 2d 342, *cert. denied*, 277 N.C. 112 (1970). In the case at bar, the plaintiff has the burden of showing that the June 1981 myocardial infarction which changed the condition from partial to total disability was the direct and natural result of the first compensable attack. It is insufficient for the plaintiff to merely show that the damage from the first myocardial infarction, when coupled with the damage from the subsequent infarctions, contributed in some measure to his present disability. As noted by Deputy Commissioner McCrodden in her opinion and award, Chairman Stephenson in his dissenting opinion to the Commission's award, and Judge John Martin in his dissenting opinion in the Court of Appeals, the evidence in this case totally fails to satisfy this requirement.

Following the primary compensable heart attack on 12 April 1979, the plaintiff was hospitalized until 2 May 1979. The plaintiff returned to full-time work on 15 July 1979 and performed his normal duties for a period of nine months without any symptoms of heart difficulty. In August of 1980, the plaintiff suffered another myocardial infarction while he was walking through a flea market during his leisure time. Following a period of recuperation, the plaintiff was able to return to work. The plaintiff suffered an additional myocardial infarction in June of 1981 while he was sleeping at home, and since that date, he has been unable to work.

Dr. Hindman, a cardiologist who treated the plaintiff, testified at the hearing on 13 April 1984 as a medical expert. He stated that the plaintiff had a history of high blood pressure for three years prior to the original myocardial infarction which occurred on 12 April 1979. Dr. Hindman defined a myocardial infarction as being a death of heart muscle resulting from an interruption of the blood flow to the heart muscle. Dr. Hindman further testified that, in his opinion, the plaintiff was suffering

from advanced coronary artery disease and that this disease existed prior to the plaintiff's initial myocardial infarction on 12 April 1979. Dr. Hindman stated that coronary artery disease is a progressive illness and can progress very rapidly. Dr. Hindman said that the plaintiff's coronary artery disease was so advanced that in May of 1983 one of his coronary arteries was 100% blocked, while the other two were 75% to 95% blocked. The plaintiff suffered from angina, which resulted from occlusions or blockages of his coronary arteries. It is important to note that Dr. Hindman did *not* testify that the myocardial infarctions that occurred in August of 1980 and June of 1981 were the direct and natural result of the first myocardial infarction. To the contrary, Dr. Hindman made it clear that the second and third myocardial infarctions were the result of the continued progression of the plaintiff's coronary artery disease.

The damage to the plaintiff's heart muscle which resulted from the myocardial infarction on 12 April 1979 did not prevent the plaintiff from returning to his regular job. According to Dr. Hindman, this fact indicated that the plaintiff's heart muscle was continuing to receive an adequate blood flow following the first myocardial infarction. Dr. Hindman noted that the ability of the plaintiff's heart to pump blood to his body had been affected by the first myocardial infarction, but the plaintiff's heart was still strong enough to enable the plaintiff to perform his normal job without any coronary symptoms.

Of some twelve pages of summary of the medical evidence in the record before this Court, the majority has chosen to anchor its opinion on a one-sentence quotation from that summary. That one sentence is as follows:

It is my opinion that Mr. Weaver's present disability is a combination of the cumulative damage of the heart muscle and the continued underlying coronary occlusions that still cause him angina.

On the basis of this one sentence, the majority concludes that "[f]inding of fact number 9 was clearly supported by competent evidence." I do not agree with that conclusion. Finding of fact number 9 was as follows:

9. Plaintiff's total incapacity to earn wages was caused by a combination of the cumulative damage to the heart mus-

cle resulting from his initial compensable heart attack, his three subsequent attacks and the continued underlying coronary occlusions that also cause angina.

Neither the quoted testimony nor the finding of fact even address the question of whether the subsequent attacks which produced the changed condition were the direct and natural result of the first compensable heart attack. From any fair reading of the entire medical testimony, one would have to conclude that the second and third heart attacks resulted solely from the continued progression of the claimant's coronary artery disease and were in no way triggered by, caused by, or the direct and natural result of his first attack.

It is my position that, during the course of the hearing, the claimant failed to elicit any testimony from Dr. Hindman which demonstrated that his change of condition was the direct and natural result of the original compensable heart attack. On the contrary, he testified that the two subsequent myocardial infarctions were caused by progressive coronary artery disease that predated the original compensable attack. Because the claimant failed to establish a causal relationship between the compensable injury and the subsequent myocardial infarctions, he has failed to show a compensable change of the condition under N.C.G.S. § 97-47.

I also agree with the Commissioner (then Chairman) Stephenson of the Industrial Commission, who dissented from the Commission's order, and with Judge Martin, who dissented from the opinion of the Court of Appeals, that the Commission and the majority of the panel below has applied, without saying as much, the "significant contribution" test recently adopted by this Court in the occupational disease field. In effect, the majority has held that if this claimant's permanent total disability is significantly contributed to by his first compensable heart attack, he is entitled to compensation for that percentage of his disability contributed by the first attack. In my view, this is a totally inappropriate test in cases where the permanent total disability results from a series of heart attacks, only the first of which is work related.

Under the majority opinion, as I understand it, if a worker suffers *any* heart attack during the course and scope of his employment, he will receive compensation for a change of condi-

tion resulting from a second, further disabling heart attack, regardless of where that heart attack occurs and regardless of the cause or extent of the second heart attack or its contribution to the plaintiff's disability. In a case like the one before us now, the result would be no different if the heart attack which eventually totally disabled the claimant occurred while he was scaling the Matterhorn or in bed with a paramour, so long as a physician testifies that the total disability results from a "combination" of the series of attacks and any other possible underlying conditions that might be preexisting. This assessment of the impact of the decision of the majority is hardly an overstatement.

It should also be noted that a change of condition, particularly where it arises from a heart attack, may not readily manifest itself. Here, the change occurred within approximately two years of the original attack. However, if, in a given case, there should be an award for the maximum period of 300 weeks for permanent partial disability arising from a work-related heart attack, because the claimant has two years after the last payment within which to file for a change of condition, an increase of compensation could conceivably be awarded as late as seven years after the employee last worked for the employer who experiences the cost.

I believe it is inappropriate for an appellate court to fashion new rules, particularly in such areas of the Workers' Compensation Act as this, which involve public policy decisions best determined by the legislature. I vote to reverse the Court of Appeals and vacate the Commission's award.