***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with some modification.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. There was an employer-employee relationship between plaintiff and employer-defendant Food Lion, Inc., on May 2, 1995.
3. Defendant-employer is self-insured with Risk Management Services, Inc., as the servicing agent.
4. The parties stipulate to an average weekly wage of $146.52, which yields a compensation rate of $97.68.
5. Defendant-employer Food Lion, Inc. employed plaintiff on May 2, 1995.
6. Plaintiff, Marilyn Dolley, was injured in the course and scope of her employment with Food Lion, Inc.
7. The medical records are authentic.
8. A black index of medical records was marked as stipulated exhibit 1 and received into evidence.
9. Plaintiff has been totally disabled since September 12, 2000 to the present and continuing.
 *********** ADDITIONAL EXHIBITS
A photograph marked as plaintiff's exhibit 1 was received into evidence.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing, plaintiff was a sixty-three year old female who had been employed by defendant-employer as a cashier since 1986. Plaintiff is currently attempting to earn a GED.
2. Plaintiff had pre-existing degenerative osteoarthritis with varus deformities in her right knee prior to May 2, 1995. As a result of the pre-existing condition in her right knee, plaintiff was bowlegged. No evidence was presented that this pre-existing condition was disabling to the extent that plaintiff was unable to work prior to May 2, 1995.
3. On May 2, 1995, plaintiff tripped on a rolled up carpet underneath her workstation and twisted her right knee.
4. The Full Commission takes judicial notice that on June 22, 1995, the Industrial Commission approved a Form 21 Agreement whereby defendant-employer agreed to pay compensation in the amount of $97.68 per week for necessary weeks for the injury to plaintiff's right knee sustained on May 2, 1995.
5. On May 12, 1995, plaintiff began a course of treatment for her right knee with Dr. Michael Romash, an orthopedic surgeon. At this initial examination, plaintiff complained of pain in both the medial and lateral sections of her right knee. Dr. Romash suspected that an arthritic condition was the cause of plaintiff's pain in the medial region of her right knee. He suspected a meniscus tear was the cause of the pain in the lateral region of plaintiff's right knee.
6. At the second examination by Dr. Romash on June 5, 1995, plaintiff reported significant pain in the medial region of her right knee and minimal problems with pain in the lateral region of her right knee. Dr. Romash recommended that the plaintiff undergo an osteotomy on her right knee.
7. On August 10, 1995, plaintiff underwent both an arthroscopy of her right knee and a proximal osteotomy. As a result of the arthroscopy, Dr. Romash removed damaged tissue in the lateral meniscus of plaintiff's right knee. The purpose of this surgery was to reduce the pain in plaintiff's lateral region of her right knee. As a result of the osteotomy, Dr. Romash cut plaintiff's tibia just below the patellar tendon and placed an external fixator inside the cut bone. The purpose of this surgery was to reduce the pain in the medial region of plaintiff's right knee.
8. A Form 26 Agreement was approved by the Industrial Commission on December 15, 1995 whereby defendant-employer agreed to pay temporary total disability compensation of $97.68 per week for necessary weeks for the time period beginning August 10, 1995. Plaintiff's inability to work during this time period was a direct result of the August 10, 1995 surgery on her right knee.
9. On February 14, 1996, plaintiff underwent a second surgical procedure to have the fixator removed from her right knee.
10. In a letter dated July 3, 1996, Dr. Romash informed Mitzi Patton, claims representative for defendant-employer, that plaintiff's pre-existing condition was exacerbated by her on the job injury. Dr. Romash reported that it was impossible to treat a part of plaintiff's knee without treating plaintiff's whole knee.
11. On August 29, 1996, plaintiff underwent a third surgical procedure to bone graft and fix her tibia in her right knee. This surgery was a direct and natural result of the non-union of the tibia bone that was cut during the August 10, 1995 osteotomy. During this surgery, Dr. Romash implanted an internal bone stimulator.
12. A Form 26 Agreement was approved by the Industrial Commission on January 3, 1997 whereby defendant-employer agreed to pay temporary total disability compensation of $97.68 per week for necessary weeks for the time period beginning August 29, 1996. Plaintiff's inability to work during this time period was a direct result of the August 29, 1996 surgery on plaintiff's right knee.
13. On March 31, 1998, plaintiff underwent a fourth surgical procedure to remove the bone stimulator that was implanted in her right knee on August 26, 1996.
14. On May 26, 1998, the Industrial Commission approved a Form 26 whereby defendant-employer agreed to pay temporary total disability compensation of $97.68 per week for one and two-sevenths weeks. Plaintiff's inability to work during this time period was a direct result of the surgery plaintiff received on March 31, 1998.
15. On January 19, 1999, plaintiff reached maximum medical improvement with regard to the injuries she sustained to her right knee treated by Dr. Romash unless she undergoes a total knee replacement.
16. In the event that plaintiff needs a total knee replacement in the future, that surgical procedure is related to her pre-existing condition and is not a direct and natural consequence of her May 2, 1995 injury by accident.
17. Independent medical evaluations of plaintiff were completed by Dr. Edward Habeeb and Dr. Deanna M. Boyette, orthopedic surgeons. All of the medical experts, including Dr. Romash, the treating orthopedic surgeon, agreed that plaintiff had preexisting osteoarthritis in her knees with varus deformities. The medical experts also are in agreement and the Commission finds that plaintiff's compensable injury by accident on May 2, 1995 aggravated or exacerbated the preexisting condition in her right knee. The expert medical opinions fail to show by the greater weight of the evidence that plaintiff's condition after the four surgeries is unrelated to the compensable injury by accident. The damage to plaintiff's knee as a result of the compensable injury contributed to plaintiff's resulting disability and the right knee must be treated as a whole entity.
18. As a result of the May 2, 1995 compensable injury by accident, plaintiff sustained a forty percent permanent partial disability to her right knee.
19. Plaintiff returned to work following her surgeries, but with reduced hours. Plaintiff has never returned to her pre-injury earning capacity nor wages.
20. Since September 12, 2000, plaintiff has been totally unable to earn any wages as a direct and natural result of the compensable injury by accident and the subsequent aggravation of her preexisting osteoarthritis.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has an ongoing presumption of disability based upon the Form 21 Agreement approved by the Industrial Commission on June 22, 1995 and the subsequent Form 26 Agreements. Kisiah v. W.R. Kisiah Plumbing,124 N.C. App. 72, 476 S.E.2d 424, disc. review denied, 345 N.C. 343,483 S.E.2d 169 (1997); Franklin v. Broyhill Furniture Industries,123 N.C. App. 200, 472 S.E.2d 382 (1996).
2. "If additional medical treatment is required, there arises a rebuttable presumption that the treatment is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury." Reinninger v. Prestige Fabricators, Inc., 136 N.C. App. 255,259, 523 S.E.2d 720, 723 (1999), quoting Pittman v. Thomas Howard,122 N.C. App. 124, 130, 468 S.E.2d 283, 256, disc. review denied,343 N.C. 513, 472 S.E.2d 18 (1996); Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997). Defendant failed to meet this burden.
3. When an employee is unable to earn wages, partially as a result of a compensable injury and partially due to a preexisting condition, that employee is entitled to an award of compensation. Weaver v. SwedishImports Maintenance, Inc., 319 N.C. 243, 354 S.E.2d 477 (1987); Countsv. Black Decker Corp., 121 N.C. App. 387, 465 S.E.2d 343 (1996). The work-related injury is not required to be the sole cause of an employee's disability, but must have contributed in some reasonable degree to the worker's disability. Smith v. Champion Int'l, 134 N.C. App. 180,517 S.E.2d 164 (1999); Hoyle v. Carolina Associated Mills,122 N.C. App. 462, 470 S.E.2d 357 (1996). In this case plaintiff's compensable injury by accident aggravated the preexisting right knee condition and contributed to her resulting disability.
4. As the result of the compensable injury, plaintiff is disabled and is entitled to receive total disability compensation in the amount of $97.68 per week beginning September 12, 2000 to the present and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have defendant pay for all medical expenses incurred or to be incurred as a result of the compensable injury by accident. In the event that plaintiff undergoes total knee replacement surgery, defendant shall not be responsible for this surgery as it is due to a pre-existing condition. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay directly to plaintiff total disability compensation in the amount of $97.68 per week for the time period beginning September 12, 2000 to the present and continuing until further Order of the Industrial Commission. The portion of this amount that has accrued shall be paid in a lump sum subject to the attorney's fee approved below.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury by accident. Said approved medical expenses do not include payment for total knee replacement.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be sent directly to plaintiff's counsel.
3. Defendant shall pay expert witness fees in the amount of $325.00 for Dr. Romash, $325.00 for Dr. Habeeb, and $325.00 for Dr. Boyette, to the extent these costs have not already been paid.
This the ___ day of March 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
LKM/mhb