***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award of the Deputy Commissioner. The Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in the I.C. Form 21, Agreement for Compensation, which was approved by the Commission on November 3, 2000, the I.C. Form 26 Supplemental Agreement also approved on November 3, 2000, in their Pre-Trial Agreement, and at the Deputy Commissioner hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury on August 19, 1998, as a result of which the parties entered into the Form 21 Agreement. Plaintiff has received one and three sevenths weeks of temporary total disability benefits pursuant to the Form 21.
5. Plaintiff's average weekly wage was $437.92, which yields a compensation rate of $291.96 per week.
6. Plaintiff has not been paid temporary partial disability, as the claim has been denied.
7. The following exhibits have been stipulated to the parties and were admitted into evidence at the hearing before the Deputy Commissioner.
Copies of plaintiff's medical records;
Copies of discovery;
All Industrial Commission forms.
8. The issues for determination are:
 a. To what extent was plaintiff temporarily partially disabled?
b. To what extent is plaintiff permanently partially disabled?
c. Is plaintiff entitled to further medical care?
 d. Is plaintiff's current medical condition causally related to the compensable injury?
 ***********
The Full Commission adopts with some modifications the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a sixty-five year old female, who was employed as a sales associate in the tabletop area. Plaintiff had a B.A. degree in child development and upon her retirement, she began working on a forty-hour per week basis for defendant-employer in August of 1996. Plaintiff's duties included assisting brides to select and prepare registries, entering items in the computer, waiting on customers, and obtaining items from the stockroom.
2. On March 7, 1998, Dr. Michael Rees diagnosed plaintiff with chronic back pain syndrome on the basis of degenerative disc disease. Dr. Rees imposed restrictions of no heavy lifting or extensive bending, reaching or stair climbing.
3. On August 19, 1998 plaintiff went into a stockroom to look for an item. A co-worker was on a twelve foot ladder above her, and a five to ten pound box fell and hit plaintiff. A second box fell and hit plaintiff in the neck and right knee. She remained at work approximately 45 minutes after the incident. The next morning plaintiff sought treatment at Blue Ridge Primary Care for low back distress and knee pain. Plaintiff was told to reduce her work hours, avoid squatting, bending and lifting. Plaintiff was prescribed muscle relaxers, along with her work restrictions. An MRI was ordered in January of 1998.
4. On September 8, 1998, Dr. Paul Schricker of Dhillon Orthopedic and Sports Medicine Center examined plaintiff. Diagnostic studies revealed plaintiff to have degenerative disc disease in both her lumbar and cervical spine. Plaintiff was ordered to physical therapy and was instructed to remain out of work until September 18, 1998, when she could return on light duty. A cervical MRI revealed a central herniated nucleus pulposus at C4-5 with moderate spondylosis and ridging of C5 to C6 and C6 to C7. On November 16, 1998, plaintiff requested that Dr. Schricker assign a permanent impairment rating, as she indicated she did not believe she would ever get better. After Dr. Schricker advised that two months following an injury was not an appropriate healing period post-injury, plaintiff requested a second opinion.
5. Between the date of the compensable injury and February of 1999, plaintiff worked her regular hours. In February 1999 plaintiff decided to retire and requested that her store manager change her status from full time to part time at twenty hours per week, two full days and one half day, effective March 1, 1999. Plaintiff testified she had become less flexible, her neck was grinding and clicking, she had neck spasms and found it difficult to sleep.
6. On or about August 3, 1999, plaintiff was authorized to seek a second opinion from Dr. Timothy Garner, a board certified neurosurgeon. On September 9, 1999, Dr. Garner found plaintiff had some spasm of the upper sternocleidomastoid on the right that was palpable and some restriction of motion. Plaintiff also complained about knotting behind her right ear. Dr. Garner recommended anti-inflammatory medications for cervical strain. Dr. Garner's review of plaintiff's MRI revealed degenerative changes in the cervical and lumbar spine. He encouraged plaintiff to return to her family doctor, as her condition did not require a neurosurgeon. Plaintiff informed Dr. Garner that she was partially retired and worked 20 hours a week. Dr. Garner concluded that no further restrictions were indicated.
7. On September 9, 1999, Dr. Garner found that plaintiff was at maximum medical improvement and did not believe any further diagnostic studies were necessary. Dr. Garner stated that plaintiff retained a five percent permanent functional impairment to her neck and a five percent permanent functional impairment to her low back as a result of the compensable injury.
8. On or about October 28, 1999, the parties entered into a Form 26 Agreement pursuant to which plaintiff was paid for the ten percent impairment rating as assigned by Dr. Garner.
9. On March 13, 2000, plaintiff returned to Dr. Garner with continued complaints of pain on the right side of her neck. Dr. Garner referred plaintiff for additional diagnostic testing. Plaintiff advised Dr. Garner that she had voluntarily reduced her work hours due to her neck condition. Based upon plaintiff's representations to him that she could only work reduced hours due to pain, Dr. Garner imposed restrictions of not more than twenty hours per week and no more than two consecutive days of work. On April 14, 2000, a CT scan revealed a large osteophyte adjacent to the right aspect of C3, with a smaller osteophyte on the left side. Dr. Garner advised plaintiff that this was not the likely source of her pain, and he recommended chiropractic care. Plaintiff did not report any complaints regarding loss of flexibility, neck grinding and clicking, or sleep problems.
10. Plaintiff argues that as a result of her injury by accident on August 19, 1998, she had a change of condition as of March 13, 2000. Plaintiff states that the change of condition has affected her earning capacity in that she can no longer work 40 hours a week, and her schedule has been reduced to 20 hours per week. Further, she contends that her earning capacity changed due to the muscle spasms, even though there has been no physical change in her condition.
11. The greater weight of the evidence shows that plaintiff reported the same symptoms of pain and spasm on the right side of her neck to Dr. Garner in September 1999 as she did in March 2000. Likewise, the test results show no change in the objective findings of the preexisting degenerative condition of plaintiff's neck from September 1999 until March 2000. Plaintiff's ability to work only 20 hours per week also did not change from September 9, 1999 until March 13, 2000, since she had been working these same partial hours since March 1999.
12. Neither plaintiff's lumbar nor her cervical degenerative disc disease was caused by the work-related injury of August 20, 1998.
13. Although Dr. Garner expressed an opinion that plaintiff sustained a change in her condition as of March 13, 2000, the Commission gives greater weight to the opinions of Dr. Schricker, the physician who treated plaintiff within three weeks after the compensable injury by accident and was more familiar with plaintiff's condition as a result of the accident. Dr. Schricker believed that plaintiff's soft tissue injury resolved several weeks after the compensable injury by accident. He also stated, after reviewing the test results, that there was no change in plaintiff's diagnosis after the March 2000 MRI and CT scan and that her pain in March 2000 was more likely related to her degenerative condition than to the compensable cervical strain. Dr. Schricker stated that plaintiff's compensable injury resulted in a muscular ligamentous spine strain that was not severe enough to cause worsening symptoms over time.
14. The greater weight of the competent medical evidence in the record supports a finding that any change of condition for which plaintiff seeks benefits was not causally related to the cervical strain she sustained on August 19, 1998, but rather was due to her preexisting degenerative condition. Furthermore, the greater weight of the evidence does not support a finding that plaintiff's preexisting degenerative condition was exacerbated by the cervical strain. Likewise, there is no evidence to support a finding that plaintiff's permanent impairment rating increased as a result of the cervical strain. The greater weight of the evidence also fails to support a finding that plaintiff's reduced hours after March 1, 1999 or after March 13, 2000 were due to the compensable cervical strain.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident in that she sustained a specific traumatic incident of the work assigned on August 19, 1998 while in the course of employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Pursuant to N.C. Gen. Stat. § 97-47, the Commission may review an award of compensation upon application of any party on the grounds of a change of condition. A "change of condition" has been defined as a condition occurring after a final award of compensation that is different from the conditions existing at the time the award was made. Weaver v.Swedish Imports Maintenance, Inc., 319 N.C. 243, 354 S.E.2d 477 (1987). The change in condition can be a change in earning capacity, in physical condition or in degree of disability. Blair v. American Television Communications Corp., 124 N.C. App. 420, 477 S.E.2d 190 (1996). The burden of proving a change of condition is on the party seeking the modification. The moving party must prove the existence of the new condition and that it is causally related to the compensable injury.Willis v. Davis Indus., 13 N.C. App. 101, 185 S.E.2d 28 (1971).
3. In this case, plaintiff failed to prove by the greater weight of the evidence that she sustained a change of condition as of March 13, 2000. In addition, the greater weight of the medical evidence does not show that plaintiff's disability, if any, after March 2000 was causally related to the injury by accident.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for change of condition is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
This the ___ day of November 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER LKM: kjd