* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of the parties.
4. An employment relationship existed between plaintiff and defendant-employer at all times relevant herein, including October 6, 1998.
5. Plaintiff sustained a compensable low back strain on October 6, 1998.
6. Subsequent to his employment with Griffin Services, plaintiff has worked for various other employers, including but not limited to, Bobbee's Enterprises, Belt Concept of America, Headway Corporate Staffing, and Americal, earning wages greater than or equal to his average weekly wage as of October 6, 1998.
7. The following stipulated exhibit was admitted into evidence:
Stipulated Exhibit #1 — plaintiff's medical records
8. The undersigned take judicial notice of the following:
 a. The Opinion and Award filed by (former) Deputy Commissioner John A. Hedrick on August 23, 2000;
 b. An Administrative Order, filed on April 16, 2001, by (former) Special Deputy Commissioner Gina E. Cammarano; and
 c. Order dated June 19, 2001, filed by Deputy Commissioner Morgan Chapman.
9. The responses received from Drs. Paul Suh, Robert Esposito, and Robert Martin are received into evidence and marked as Stipulated Exhibits 2 3 and defendants' Exhibit # 1 respectively.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Defendant-employer employed plaintiff as a temporary worker for assembly-line work, with primary assignments in factory settings. On October 6, 1998, plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with defendant-employer. Plaintiff was injured while working as a temporary employee when a bookcase fell on him causing him to experience pain in his lower back. Defendants accepted the claim as compensable and provided plaintiff with both indemnity and medical compensation benefits.
2. On October 7, 1998, plaintiff sought treatment with Dr. Warren Blackburn at Franklin Family Medicine with complaints of low back pain and some muscle spasms. Plaintiff did not report any pain radiating into his lower extremities. He was prescribed medications to alleviate his symptoms and excused from work. Dr. Blackburn continued to treat plaintiff conservatively with pain and muscle relaxant medications. Plaintiff complained at times of pain radiating into the upper portion of his left leg, but Dr. Blackburn found no objective symptoms or neurological injury.
3. Dr. Blackburn referred plaintiff to Duke University Medical Center's Division of Orthopedic Sports Medicine for an evaluation. On November 11, 1998, plaintiff presented to Dr. Robert Esposito. Plaintiff reported that his leg pain had resolved, but he continued to have some pain in his lower back that Dr. Esposito determined was not from a neurological origin. Dr. Esposito continued plaintiff's prescriptions for anti-inflammatory and muscle relaxant medications. Dr. Esposito prescribed physical therapy treatments and authorized plaintiff to return to work at light duty. Plaintiff returned to Dr. Esposito again with complaints of leg pain, but an MRI revealed no evidence of focal disk herniation, spinal stenosis or neuroforamen narrowing. However, the MRI did reveal some mild osteoarthritis changes at the facet joints at L5-S1. Dr. Esposito released plaintiff to return to work without restrictions.
4. After plaintiff's October 6, 1998, injury, defendant-employer assigned plaintiff to work in its office performing a light duty paperwork position. Plaintiff worked this light duty position for approximately one week and was then assigned to work at a thrift store the following week. Plaintiff worked this position for approximately three days. However, plaintiff was subsequently terminated on November 28, 1998, for failure to report absences or tardiness as required by defendant-employer's personnel policy.
5. A hearing was held on September 1, 1999, in Nashville, North Carolina before (former) Deputy Commissioner John Hedrick. Deputy Commissioner Hedrick found that some of plaintiff's absences and tardiness were caused by his compensable injury by accident. Defendants have compensated plaintiff for temporary total disability compensation from November 28, 1998, through July 29, 1999, pursuant to the Opinion and Award filed on August 23, 2000, by Deputy Commissioner Hedrick.
6. Plaintiff applied for and received unemployment compensation benefits at the rate of $118.00 per week from April 1, 1999, through June 30, 1999. Deputy Commissioner Hedrick found that defendants were entitled to a credit against any temporary total disability compensation due plaintiff from April 1, 1999, through June 30, 1999, pursuant to N.C. Gen. Stat. § 97-42.1.
7. On July 29, 1999, plaintiff returned to work for a sauce manufacturer. Plaintiff voluntarily resigned from this position one week prior to the hearing of this claim before Deputy Commissioner Hedrick. Deputy Commissioner Hedrick found that plaintiff was capable of continuing to work and earn wages from the sauce manufacturer. Deputy Commissioner Hedrick further found that plaintiff sustained a low back strain as a result of the incident on October 6, 1998, but retained no permanent impairment as a result of the incident.
8. In approximately December 1999, plaintiff returned to work with Belt Concepts as a line operator. Plaintiff made over $9.00 per hour at this position, which is more than he made at Griffin Services or the sauce manufacturer. Defendants did not learn until after Deputy Commissioner Hedrick's Opinion and Award was issued that plaintiff's earnings exceeded his former average weekly wage.
9. Plaintiff did not sustain any injuries to his back while working for Belt Concepts, but at some point his job responsibilities changed such that he did not feel that he could continue working at that position, so he voluntarily ended his employment with Belt Concepts. None of plaintiff's physicians told him that he could not continue to perform his job requirements at Belt Concepts.
10. On or about July 15, 2000, plaintiff attended his cousin's wedding in Greensboro, North Carolina. At the reception, he attempted to perform the "electric slide" dance, and as he bent over and came back up he felt a "split" or "tear" in his back. As a result, plaintiff presented to Carolina Regional Orthopaedics on July 21, 2000, for an evaluation of his back. Dr. Robert Martin, an orthopedic specialist, who had previously treated plaintiff in 1999 for left sacroiliac dysfunction, saw him. When Dr. Martin had last seen plaintiff on December 15, 1999, he was doing quite well and he returned plaintiff to regular work activities.
11. At the July 21, 2000, office visit with Dr. Martin, plaintiff complained of lower lumbar back pain that began after dancing at a party. Plaintiff indicated that the pain was in his lower back area and emanated into both buttocks and upper thigh areas. Plaintiff also reported bilateral intermittent heel pain. On examination, plaintiff was tender in his lumbar paraspinal area. Plaintiff also had difficulty bending down, touching his toes and bending from left to right. Dr. Martin opined that plaintiff had discogenic low back pain with mild lumbar sprain/strain.
12. On August 3, 2000, plaintiff sought follow-up treatment with Dr. Martin for his discogenic low back pain and mild lumbar sprain/strain. At this time, plaintiff had better range of motion, was less tender to palpitation in his back and his neurological exam was intact. Plaintiff's discogenic low back pain was resolving and Dr. Martin indicated that plaintiff could resume activities as tolerated and return to his normal work activities.
13. On October 18, 2000, plaintiff sought treatment at Carolina Regional Orthopaedics for his discogenic low back pain and bilateral Achille's tendonitis. Plaintiff reported that he had to perform a lot of lifting at work and reported that his back had bothered him occasionally with the pain going down into his legs. It is not clear from the record where plaintiff was employed at this time but it was not with the defendant-employer.
14. On January 17, 2001, plaintiff sought follow-up treatment at Carolina Regional Orthopaedics. Plaintiff reported that his back pain was almost completely resolved and only occurred intermittently. On examination, plaintiff had good range of motion in his back and was not tender. Dr. Martin released plaintiff to normal work activities and found that he had reached maximum medical improvement.
15. At some point in 2001, plaintiff attempted to work for another temporary employment agency, and he received job assignments for two weeks. Based on his testimony at the hearing before the Deputy Commissioner, plaintiff's pain was exacerbated due to the amount of standing required in those jobs, so he voluntarily ended his employment with that agency. Plaintiff subsequently accepted a position as a machine operator with Americal in Henderson, North Carolina but was terminated due to his inability to keep pace with production.
16. Between November 2001 and March 2003, plaintiff drew unemployment benefits in the amount of $308.00 per week.
17. At the hearings before the Deputy Commissioner and before the Full Commission, plaintiff acknowledged that he received a Form 90 (Report of Earnings) from defendants but he did not return the Form, which had been sent to him in 2000. Plaintiff further admitted that he received an April 16, 2001, Order from the Industrial Commission, which suspended his benefits pending production of the Form 90 with his wage records.
18. Subsequent to the hearing before the Deputy Commissioner, the record was held open to allow the parties time to question plaintiff's treating physicians. Both parties submitted questions to the physicians. In response, Dr. Paul Suh at North Carolina Spine Center opined that there is a possibility of spinal injury when there is an accident or trauma that involves the head, face, neck and back. Dr. Suh further opined that an underlying condition could be a reason for re-injury to the back. Furthermore, the type of force applied to the spine would also place a patient at greater risk for re-injury.
19. Dr. Suh opined that damage to the discs, muscles or ligaments can produce back pain but it was not likely that plaintiff suffered from chronic low back pain due to an overall imbalance of his spinal structure. Dr. Suh assessed that in order to prevent further spinal injury, an appropriate diagnosis must be obtained and appropriate treatment must be undertaken. As of July 2004, Dr. Suh diagnosed plaintiff with lumbar sprain/strain as well as lumbar degenerative disks but found that plaintiff's prognosis was fair and that he was not a surgical candidate. Plaintiff had been unable to undergo a discogram to further assess his condition, so Dr. Suh recommended physical therapy and advised plaintiff to return as needed.
20. In response to questions from the parties, Dr. Robert Esposito at Duke University Medical Center indicated that the possibility of spinal injury should be considered after trauma. Steps should be taken when a spinal injury is suspected to determine if there is any bone or nerve damage. Dr. Esposito further opined that it was possible that plaintiff suffered from low back pain due to an imbalance but his clinical diagnosis was low back pain with radiation down his left leg to the knee. Dr. Esposito concluded that plaintiff's back and leg pain were resolved since his neurological exam was essentially normal. Plaintiff's x-rays revealed mild scoliosis and his MRI films showed no evidence of focal disk herniation, spinal stenosis or neuroforaminal narrowing. Furthermore, Dr. Esposito provided that within eight weeks of plaintiff's injury by accident, he had a normal neurological exam and his MRI films showed no evidence of any neurological damage. However, Dr. Esposito stated that he had not evaluated plaintiff since January of 1999 and could not comment on his current condition. As of March 1, 2000, Dr. Esposito released plaintiff from his care, found plaintiff to be at maximum medical improvement, assigned a 0% permanent partial impairment rating as a result of his October 6, 1998, injury by accident, and released plaintiff to return to work without restrictions.
21. In response to questions, Dr. Robert Martin, an orthopedic specialist at Carolina Regional Orthopaedics indicated that when plaintiff presented to his office on July 21, 2000, with lower lumbar back pain, plaintiff indicated that he developed this pain after dancing at a party. Dr. Martin opined that plaintiff was doing quite well, and had been released to return to work at regular duties. Dr. Martin opined that the diagnosis of discogenic low back pain with mild lumbar sprain and strain as of July 21, 2000, resulted from plaintiff's party dancing and not as a result of his original compensable injury.
22. An emergency room note from Duke University Medical Center, dated April 2, 2002, indicted that plaintiff's back had not recently been bothering him until he had an onset of pain "on Saturday" which had continued and worsened since that time. Plaintiff did not recall any specific activity or action that preceded his current problem. Dr. Martin indicated that plaintiff presented to his office on April 12, 2002, with complaints of lower lumbar back pain with radicular left leg pain. Dr. Martin noted that plaintiff was seen at Duke University Medical Center and treated for the same symptoms. Dr. Martin indicated that he was unable to assess whether the lower back pain for which plaintiff was treated at Duke University Medical Center on April 2, 2002, and for which he was treated in his office on April 12, 2002, was caused by his injury by accident on October 6, 1998, or by plaintiff's party dancing in July 2000. Dr. Martin concluded that he did not have enough evidence to causally relate plaintiff's recurrence of back pain to either episode.
23. Based on the greater weight of the medical evidence in this matter, there is insufficient evidence to prove that plaintiff's current disability is causally related to his original compensable injury by accident or that he has sustained a change in condition pursuant to N.C. Gen. Stat. § 97-47. The medical evidence also fails to demonstrate that plaintiff's current need for medical treatment is causally related to his original compensable injury.
24. Based on the greater weight of the credible evidence, the Full Commission finds that the diagnosis of discogenic low back pain with mild lumbar sprain and strain as of July 21, 2000, was not a result of plaintiff's original compensable injury by accident on October 6, 1998.
25. Plaintiff's workers' compensation benefits were suspended effective March 30, 2001, by Administrative Order of Special Deputy Commissioner Gina Cammarano filed April 16, 2001, for plaintiff's failure to submit a properly completed Form 90. There is no evidence to indicate that plaintiff has yet complied with this Order.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident in that he sustained a specific traumatic incident of the work assigned on October 6, 1998, arising out of and in the course of employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Pursuant to N.C. Gen. Stat. § 97-47, the Commission may review an award of compensation upon application of any party on the grounds of a change of condition. A "change of condition" has been defined as a condition occurring after a final award of compensation that is different from the conditions existing at the time the award was made. Weaver v. Swedish ImportsMaintenance, Inc., 319 N.C. 243, 354 S.E.2d 477 (1987). The change in condition can be a change in earning capacity, in physical condition or in degree of disability. Blair v. AmericanTelevision Communications Corp., 124 N.C.App. 420,477 S.E.2d 190 (1996). The burden of proving a change of condition is on the party seeking the modification. The moving party must prove the existence of the new condition and that it is causally related to the compensable injury. Willis v. Davis Indus.,13 N.C. App. 101, 185 S.E.2d 28 (1971). In this case, plaintiff failed to prove by the greater weight of the evidence that he sustained a change of condition that entitles him to relief pursuant to N.C. Gen. Stat. § 97-47.
3. The greater weight of the medical evidence has failed to establish that plaintiff's current inability to earn wages or his current need for medical treatment is causally related to his original compensable injury by accident of October 6, 1998. N.C. Gen. Stat. §§ 97-29; 97-25.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for temporary total or temporary partial disability benefits is hereby denied.
2. Plaintiff's claim for future medical treatment is denied, as it has not been shown that his current condition is causally related to his original compensable injury.
3. Plaintiff has failed to comply with the April 16, 2001, Order of Special Deputy Commissioner Gina Cammarano that required plaintiff to complete a Form 90, and is therefore not entitled to reinstatement of his disability compensation that was being paid by defendants at the time of its suspension.
4. Each side shall bear one-half of the costs due the Industrial Commission.
5. Defendants shall pay an expert witness fee to Dr. Esposito in the amount of $500.00
This the __ day of June 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER