* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission modifies in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the parties.
3. Plaintiff's average weekly wage is $489.61, yielding a compensation rate of $326.42 per week.
4. Plaintiff sustained a compensable injury on or about May 3, 2000.
5. The parties stipulated the following into evidence before the Deputy Commissioner:
 a. Stipulated Exhibit # 1 — Pre-Trial agreement, as modified and initialed by the parties.
 b. Stipulated Exhibit # 2 — Employment Security Commission records.
 c. Stipulated Exhibit # 3 — Industrial Commission Orders.
 d. Stipulated Exhibit # 4 — Industrial Commission Forms.
 e. Stipulated Exhibit # 5 — Social Security records.
 f. Stipulated Exhibit # 6 — Plaintiff's Employment Records.
 g. Stipulated Exhibit # 7 — Plaintiffs' Discovery Responses.
 h. Stipulated Exhibit # 8 — Defendant's Discovery Responses.
 i. Stipulated Exhibit # 9 — Defendant's Amended Discovery Responses.
 j. Stipulated Exhibit # 10 — medical records.
6. The issues before the Full Commission are whether plaintiff continues to be disabled as a result of his May 3, 2000 compensable injury, whether plaintiff was offered a permanent position within his work restrictions upon reaching maximum medical improvement, and whether plaintiff's left shoulder and hip injuries are causally related to his May 3, 2000 injury by accident.
 * * * * * * * * * * * RULING ON PROCEDURAL MATTERS
North Carolina Industrial Commission Rule 701 requires that an appellant will supply the Commission with a completed Form 44 and brief within 25 days of receipt of the transcript, unless the Commission, in its discretion, waives the use of the Form 44. In the case at bar, plaintiff filed a Form 44 and Assignments of Error on June 9, 2006, which was more than 25 days from the filing of the transcript. Counsel stated at oral arguments that due to an oversight, she neglected to file a motion for an extension of time with the Commission. Despite plaintiff's failure to timely file the Form 44 and brief, defendants were not prejudiced in their preparation of an appellate brief to the Commission. Thus, the Commission, in its discretion, waives plaintiff's failure to timely file a Form 44 and brief, and plaintiff's appeal to the Full Commission is HEREBY ALLOWED. North Carolina Industrial Commission Rules 701(2), 801.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On May 3, 2000, plaintiff was employed as a heavy assembler with defendant-employer when the fork from a forklift fell on his left forearm. Plaintiff's claim for a left forearm injury was accepted as compensable by defendant on a Form 60 completed on May 10, 2001.
2. On May 3, 2000, immediately after he sustained a left forearm injury, plaintiff received treatment from Dr. Max Kasselt. Plaintiff complained of pain, swelling, and abrasion of the left forearm. Dr. Kasselt's initial impressions were that plaintiff had a moderate contusion of the left forearm, a superficial abrasion, and neuropraxia of the superficial radial nerve, which is a compression injury to a sensory nerve that supplies sensation to the back of the hand.
3. Plaintiff continued to receive treatment from Dr. Kasselt for his left forearm injury through December 18, 2000. On August 11, 2000, Dr. Kasselt noted that he believed that plaintiff was over-focusing on somatic complaints and was amplifying symptoms. Dr. Kasselt suspected that plaintiff was manipulating the situation for secondary gain.
4. On April 5, 2001, plaintiff presented to Dr. S. Lamont Wooten for a second opinion of his left arm condition. Following his evaluation of plaintiff, Dr. Wooten indicated that he thought plaintiff suffered from a persistent injury to his radial nerve with possible entrapment. Since plaintiff's superficial nerve injury had not resolved in over a year of conservative therapy, Dr. Wooten recommended that plaintiff undergo surgery and, on April 10, 2001, plaintiff underwent a release of the superficial radial nerve in the left forearm.
5. Plaintiff missed only one day of work prior to his April 10, 2001 surgery. Following his surgery, plaintiff was out of work until April 30, 2001, when he returned to work earning the same wages he did prior to injury. Plaintiff received temporary total disability benefits from April 10, 2001 until April 30, 2001.
6. On December 6, 2001, Dr. Wooten declared plaintiff at maximum medical improvement regarding his superficial radial nerve injury and assigned plaintiff a six percent permanent partial disability rating to the left upper extremity. Additionally, Dr. Wooten assigned plaintiff a permanent work restriction of no lifting more than 25 pounds. Dr. Wooten also noted for the first time that plaintiff complained of left shoulder pain.
7. Following his release, plaintiff returned to work for defendant-employer in the decal department and continued to work for about nine months. Plaintiff worked in cell four, which included sand and paint, decal primary, options installer, door installation, and back rest installation. Plaintiff's supervisor, Mark Batts, testified that employees were required to rotate within three of the five workstations, to help with scheduling. Mr. Batts stated that the rotation in the decal department did not affect an employee's salary and that the tasks plaintiff performed in the decal department were not specifically modified for plaintiff. However, plaintiff could only work at three of the five workstations that specifically accommodated his 25-pound upper arm lifting restriction. Plaintiff could not rotate to the two other workstations. Mr. Batts testified that defendant-employer's job description of the pallet line required the ability to lift up to 50 pounds and that a person with a 25-pound lifting restriction would not qualify for the job. Mr. Batts stated that he would probably not hire someone off the street to work in the decal department who had a 25-pound lifting restriction. As a result, the Full Commission finds that the job plaintiff performed in the decal department was designed to accommodate plaintiff's restrictions and was not indicative of his wage earning capacity in the competitive job market.
8. On February 4, 2002, plaintiff presented to Dr. Wooten for an evaluation of bilateral hip pain. At that visit, plaintiff reported that he had experienced pain in his hips and low back for approximately 12 years. Dr. Wooten diagnosed plaintiff with minimal degenerative arthritis of his lumbar spine and moderate degenerative arthritis of his hips. For plaintiff's hip problems, Dr. Wooten assigned a permanent restriction of no bending and squatting. Dr. Wooten testified to a reasonable degree of medical certainty and the Commission finds that plaintiff's hip problems were not causally related to his May 3, 2000 work injury. According to Dr. Wooten, plaintiff's hip problem is considered an arthritic, degenerative, and progressive condition that is unrelated to a specific trauma.
9. Defendant-employer was unable to accommodate plaintiff's permanent restrictions of no bending and squatting assigned for plaintiff's non-work-related hip condition. Due to defendant-employer's inability to accommodate these lower body restrictions, plaintiff was laid off from his employment with defendant-employer on February 13, 2002. Defendant did not reinstate payment of temporary total disability compensation to plaintiff after the layoff. Dr. Wooten maintained his opinion to a reasonable degree of medical certainty that with respect to plaintiff's compensable left arm injury, plaintiff was capable of working within his 25 pound lifting restriction as of February 2002. Dr. Wooten also testified that, at times, plaintiff's hip problems could prevent his ability to perform heavy-duty work.
10. Plaintiff stated that he was unable to perform his job in the decal department because he sometimes experienced pain in his left arm when he reached up and pulled back. However, plaintiff never reported to Mr. Batts that his job in the decal department caused him left arm pain. Instead, plaintiff complained that he was having trouble performing his job because of his hip condition. Following his termination from his employment with defendant-employer, plaintiff applied for and received unemployment benefits. Plaintiff initially testified that he made no effort to find employment after unemployment benefits ceased, but then stated, "I've looked for work like out there to (unintelligible), small (unintelligible) business, and gone out to — so many places I have looked." The Commission finds plaintiff did not make a reasonable work search after February 3, 2003, when his unemployment benefits ceased.
11. On April 11, 2002, plaintiff returned to Dr. Wooten for pain in his forearm and numbness into the radial aspect of his hand. Plaintiff also complained of pain in his shoulder. Dr. Wooten's examination revealed nothing abnormal about plaintiff's left shoulder and he made no changes to plaintiff's permanent partial disability rating or work restrictions.
12. On August 29, 2002, plaintiff saw Dr. Wooten for continued complaints of coldness and numbness in the area of his radial nerve injury and constant pain in his left shoulder. During this visit with Dr. Wooten, plaintiff denied any specific injury to his left shoulder. Dr. Wooten felt plaintiff had rotator cuff bursitis or tendonitis, offered plaintiff a cortisone injection, and continued plaintiff on oral anti-inflammatory medications. Dr. Wooten ordered an MRI to determine if plaintiff had a rotator cuff tear; however, the MRI was never performed.
13. During the entire time that plaintiff received treatment from Dr. Kasselt, from May 3, 2000 through December 18, 2000, plaintiff never complained of any left shoulder problems. In fact, the first time that plaintiff reported any left shoulder problems to a medical provider following his May 3, 2000 injury was over a year and four months later, on September 24, 2001, when he complained to Ana Halley, the plant nurse, that his shoulder had been causing him some discomfort.
14. At his deposition, Dr. Wooten testified, "I did not see any substantial evidence or connection between the forearm injury and the later onset of pain in his shoulder," clarifying that his opinion was based on his history and multiple examinations of plaintiff. Dr. Wooten stated that it was possible plaintiff had shoulder pain since the May 3, 2000 injury, but that he did not feel the shoulder pain was a "significant feature of his problem during the early visits." Dr. Wooten elaborated that there was no objective evidence of trauma to plaintiff's shoulder. He explained that the superficial radial nerve is a purely sensory nerve that does not affect motor function and does not send information or sensation back up toward the shoulder.
15. On December 10, 2002, plaintiff presented to Dr. Kevin Speer for an independent medical evaluation. Dr. Speer also felt plaintiff had rotator cuff and biceps tendonitis and bursitis. Dr. Speer agreed with Dr. Wooten that plaintiff sustained a six percent permanent partial disability rating, was at maximum medical improvement, and could return to work with a 25 pound lifting restriction. Regarding the cause of plaintiff's shoulder problems, Dr. Speer testified, "Certainly, [the May 3, 2000 injury] would have been potentially significant enough injury to cause a rotator cuff tendon injury, a structural tear." However, Dr. Speer's opinion was "entirely" based upon plaintiff's representations that he did not have left shoulder pain prior to the May 3, 2000 injury, but that since the accident, plaintiff did experience pain in his left shoulder. Additionally, Dr. Speer did not examine plaintiff until December 10, 2002, over two and a half years after plaintiff sustained the injury. Dr. Speer only evaluated plaintiff one time and there was no objective diagnostic evidence that plaintiff's left shoulder problems were related to his work accident. Accordingly, the Full Commission gives greater weight to the testimony of Dr. Wooten, who performed surgery on plaintiff and who was plaintiff's treating physician, than to Dr. Speer, as to the cause of plaintiff's left shoulder problems.
16. The Full Commission finds that the greater weight of the evidence establishes that plaintiff's hip and left shoulder problems are not causally related to his compensable May 3, 2000 injury.
17. As the result of the compensable injury by accident, combined with the non-work related hip condition, plaintiff was unable to continue working for defendant-employer at the job which was not suitable employment in that it was so modified as to not be available in the competitive job market to someone with plaintiff's work restrictions. After his termination, plaintiff was capable of some work but was unsuccessful finding a job despite a reasonable job search during the period February 13, 2002 through February 3, 2003. After February 3, 2003, plaintiff did not make a reasonable effort to obtain employment.
18. Defendant has not defended this action without reasonable grounds.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 3, 2000, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer resulting in an injury to his left arm but not injuries to his left shoulder or hips. N.C. Gen. Stat. § 97-2(6).
2. Defendant admitted the compensability of plaintiff's injury by accident to his left arm by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001). In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982).
3. In Peoples v. Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798, (1986), the North Carolina Supreme Court stated:
 If the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level. The same is true if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market.
Id. at 438, 342 S.E.2d at 806.
4. In the present case, the decal department job was a modified job for plaintiff. Defendant-employer would not have hired someone off the street with plaintiff's limitations to perform that job. As such, the position was not available in the competitive job market and plaintiff's performance of that job is not evidence of his earning capacity.Peoples v. Cone Mills Corp., supra. Additionally, plaintiff's work-related left arm condition combined with his non-work related hip condition to render him unable to continue to perform the job at defendant-employer after February 13, 2002. Weaver v. Swedish ImportsMaintenance, Inc., 319 N.C. 243, 354 S.E.2d 477 (1987); Counts v. Black Decker Corp., 121 N.C. App. 387, 465 S.E.2d 343 (1996).
5. From February 13, 2002 until February 3, 2003, plaintiff made a reasonable but unsuccessful job search and received unemployment benefits. After February 3, 2003, however, plaintiff did not meet his burden to prove that he was unable to obtain employment after a reasonable effort or that it was futile for him to seek employment because of other factors. He was capable of some work and no doctor took him out of work. N.C. Gen. Stat. § 97-29; Demery v. Perdue Farms,Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. Plaintiff is entitled to payment by defendant of all medical expenses incurred or to be incurred as a result of his compensable injury to his left arm, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. The approved medical expenses do not include treatment of plaintiff's left shoulder or hips which are not causally related to the compensable injury by accident. N.C. Gen. Stat. §§ 97-19; 97-25.
7. Plaintiff is entitled to permanent partial disability compensation for the six percent rating to his left arm at the rate of $326.42 per week for 14.4 weeks. N.C. Gen. Stat. § 97-31(13).
8. Defendant is entitled to a credit for any unemployment compensation paid plaintiff from February 10, 2002 until February 3, 2003. N.C. Gen. Stat. § 97-42.1.
9. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v.Mountain Breeze Restaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, defendant shall pay plaintiff temporary total disability compensation at the rate of $326.42 per week for the period February 13, 2002 until February 3, 2003. This amount has accrued and shall be paid in a lump sum.
2. Subject to an attorney's fee approved below, defendant shall pay plaintiff his permanent partial disability rating of six percent to his left arm at a rate of $326.42 per week for 14.4 weeks. This amount is due and payable and shall be paid in lump sum.
3. Defendant is entitled to a credit for unemployment insurance benefits received by plaintiff during the period February 10, 2002 until February 3, 2003.
4. A reasonable attorneys' fee of 25% of the compensation due plaintiff under paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
5. Defendant shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident to his left arm, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. Defendant shall not pay for treatment for plaintiff's left shoulder and hip conditions.
6. Plaintiff's request for attorney fees pursuant to N.C. Gen. Stat. § 97-88.1 is denied.
7. Defendant shall pay the costs.
This 13th day of November, 2006.
 S/_______________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING WITH RESPECT TO LEFT SHOULDER
 S/_______________ THOMAS J. BOLCH COMMISSIONER