***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with certain modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer. *Page 2 
3. The carrier liable on the risk is correctly named above.
4. The employee's average weekly wage is $562.51.
5. Plaintiff's bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome are compensable occupational diseases with an onset date of on or about May 7, 2006.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 50 years old. He received his high school diploma in 1978 and then spent 17 years serving in the U.S. Army as a paratrooper with an MOS in communications. He served in the first Gulf War and was in both Saudi Arabia and Iraq.
2. Plaintiff sustained injuries to his right ankle, bilateral knees, and low back as a result of being a paratrooper and receives regular treatment for these conditions from the Veterans Administration. Additionally, since returning from Iraq in 1991, he has treated with the Veterans Administration for documented post traumatic stress disorder (PTSD) and chronic depression.
3. Plaintiff began working for the Hope Mills Wal-Mart Distribution Center in 1997 as a forklift operator in the Reserve Stock Replenishment (RSR) Department. Operation of the forklift required Plaintiff to stand in the cab of the forklift, using his right hand to operate the controls for driving and moving pallets, and using his left hand to grip a knob to steer that operates similar to a video game joystick. Once the pallets reached their destination, Plaintiff used a light-weight scan gun to scan a barcode attached to the pallet. Scanning of the barcodes required Plaintiff to reach overhead frequently with his left arm. At the hearing before the Deputy Commissioner, Plaintiff testified that he scanned an estimated 1,000 items per shift. *Page 3 
4. Plaintiff began experiencing pain in both upper extremities at some point in 2005. On August 31, 2006, he filled out a "Workers' Compensation Associate Statement" form with Defendant-Employer reporting pain in both hands and the left thumb reportedly due to repetitive motion of driving the forklift. Plaintiff also filled out a "Statement" alleging: "My hand, elbow, and shoulder in both right and left arm bother me and are in pain mainly the right hand, elbows and shoulder."
5. Defendant-Employer sent Plaintiff to US Healthworks on September 7, 2006. Plaintiff reported bilateral wrist and hand pain and numbness for several months and related that he believed the symptoms were due to his work duties. Plaintiff was released to light duty work and was asked to return to see Dr. Jessup on September 11, 2006. Dr. Jessup diagnosed carpal tunnel syndrome and continued Plaintiff's work restrictions. Plaintiff continued conservative treatment under Dr. Jessup's care without relief of symptoms, and therefore he was referred for an orthopedic evaluation with Dr. Harrison Tuttle at Raleigh Orthopedic.
6. Plaintiff presented to Dr. Tuttle for his wrist and forearm symptoms on November 9, 2006. Dr. Tuttle testified that Plaintiff's history and examination on that day were consistent with lateral epicondylitis of the left elbow and carpal tunnel syndrome of both hands.
7. Plaintiff returned to Dr. Tuttle on December 14, 2006. Dr. Tuttle noted that Plaintiff "now has shoulder pain when he uses his left upper extremity at shoulder height. The shoulder pain is more bothersome to him today than the elbow pain." Dr. Tuttle administered an injection to Plaintiff's left shoulder.
8. On January 25, 2007, Plaintiff's left elbow and wrist complaints had worsened and Dr. Tuttle assigned work restrictions of no use of the left upper extremity, or no work if light duty was not available. Thereafter, Defendants accepted as compensable Plaintiff's bilateral *Page 4 
carpel tunnel syndrome and bilateral cubital tunnel syndrome via Form 60 filings and commenced payment of temporary total disability compensation.
9. Plaintiff underwent left carpal tunnel release and left lateral epicondylar release surgeries by Dr. Tuttle on May 18, 2007, and right carpal tunnel release surgery by Dr. Tuttle on September 14, 2007. On January 31, 2008, Dr. Tuttle assigned Plaintiff a 5% rating to his right hand and a 5% rating to his left arm based on his elbow condition.
10. Plaintiff presented to Dr. George H. Callaway for his left shoulder pain on November 28, 2007. Plaintiff reported left shoulder pain for the past 8-12 months and attributed the pain to his job with Defendant-Employer. Dr. Callaway ordered an MRI of the left shoulder which showed evidence of a left rotator cuff tear. On January 8, 2008, Dr. Callaway recommended surgery to repair the tear. However, Dr. Callaway did not perform the surgery due to Defendants' denial of the left shoulder claim.
11. Defendants referred Plaintiff to Dr. Brian Szura of Cary Orthopedic for an Independent Medical Evaluation of Plaintiff's upper extremity conditions on October 15, 2008. Dr. Szura diagnosed a left rotator cuff tear and underlying glenohumeral arthritis. He stated that it was not unreasonsable to fix Plaintiff's tear, but believed it might not provide complete relief.
12. Plaintiff presented to Dr. Mark Brenner at Pinehurst Surgical Center for treatment of his left shoulder symptoms on January 9, 2009. Dr. Brenner performed arthroscopic surgery to repair the left rotator cuff tear on February 6, 2009. Dr. Brenner testified that Plaintiff is currently out of work due to his shoulder condition, but that "if restrictive work is available he can go back to light-duty activities . . . with one-handed work using the opposite extremity."
13. At deposition, Dr. Tuttle testified that it was "very possible" that Plaintiff's shoulder condition developed as a result of his employment and that his employment represents an *Page 5 
increased risk for such conditions over that usually experienced by persons not so employed. He deferred to Dr. Callaway as to whether causation was probable. Dr. Tuttle testified that repetitive activity is more likely to cause a rotator cuff tear if the activity is performed at or above shoulder level. Dr. Tuttle indicated that he would not defer to Dr. Szura over Dr. Callaway because Dr. Callaway focuses solely on shoulders and may have a better understanding of the shoulder and its kinematics.
14. In his deposition testimony, Dr. Callaway opined that Plaintiff more than likely developed the rotator cuff tear as a result of his work activities. He testified that Plaintiff's job, which involved using his hands and arms to direct the forklift, lifting boxes to place them on elevated surfaces, and constantly reaching above shoulder level, would put him at a greater risk of such a tear than the majority of people.
15. As a result of the independent medical examination he conducted, Dr. Szura rendered an opinion that Plaintiff's job did not place him at an increased risk for, or cause, his shoulder condition. In his deposition testimony, Dr. Szura reiterated this opinion, but agreed that some aspects of Plaintiff's job could have caused aggravation of his rotator cuff. In particular, reaching above shoulder height frequently may have presented an increased risk for the development of a rotator cuff tear.
16. At deposition, Dr. Brenner testified that without a "documented and focused traumatic event" he could not find that Plaintiff's rotator cuff tear is related to his work. However, Dr. Brenner later testified that the cause of Plaintiff's left rotator cuff tear was "probably a degenerative tear that occurred over a long period of time. Probably exacerbated, to some extent, by vigorous use of his arm." When asked if he meant vigorous use at work, Dr. *Page 6 
Brenner stated, "Possibly." The only task on Plaintiff's job description that Dr. Brenner felt posed an increased risk of rotator cuff problems was lifting up to eighty pounds frequently.
17. With regard to Plaintiff's left shoulder condition, the Full Commission assigns more weight to the opinions of Dr. Callaway and Dr. Tuttle than to those of Dr. Szura and Dr. Brenner. Of the four orthopedic surgeons that testified, Dr. Callaway is the only doctor specializing solely in treatment of the shoulder. Although Dr. Brenner operated on Plaintiff's shoulder, less weight is given to his opinion because his testimony appears contradictory. Notably, all four physicians opined that aspects of Plaintiff's job did or could pose an increased risk of rotator cuff aggravation.
18. Based upon the greater weight of the evidence, the Full Commission finds that Plaintiff's job as a fork lift driver for Defendant-Employer exposed him to an increased risk of developing a rotator cuff tear and that his rotator cuff tear is causally related to his work as a fork lift driver.
19. Plaintiff failed to present expert medical testimony to establish a causal relationship between his depression and his bilateral wrist condition, bilateral elbow condition, or left shoulder condition. The only medical evidence on this issue indicates that Plaintiff's depression, post-traumatic stress disorder (PTSD), and other psychological issues were pre-existing conditions. The medical records alone fail to establish that his bilateral wrist and elbow and left shoulder conditions aggravated or worsened his depression.
20. Plaintiff has been receiving ongoing temporary total disability compensation in relation to his admittedly compensable bilateral hand and elbow problems although Defendants contend that Plaintiff was released to return to work without restrictions as to those conditions. Defendant-Employer has not offered Plaintiff light duty work at the present time suitable to his *Page 7 
restrictions for his left shoulder condition. Plaintiff has not reached maximum medical improvement for his shoulder, and Dr. Brenner testified that it is too early to determine what, if any, permanent restrictions will be assigned to Plaintiff.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's job as a fork lift driver for Defendant-Employer exposed him to an increased risk of developing a rotator cuff tear compared to that experienced by members of the general public. Plaintiff's left rotator cuff tear is causally related to his work as a fork lift driver. Therefore, Plaintiff's left shoulder condition is a compensable occupational disease. N.C. Gen. Stat. § 97-53(13); Rutledge v.Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983).
2. Plaintiff is entitled to continued temporary total disability compensation at the weekly compensation rate of $375.01 until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his compensable medical conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. § 97-25.
4. The employer is not obligated to provide treatment for conditions that are unrelated to the work injury, as the Workers' Compensation Act was not intended to be a general accident or health insurance policy. Weaver v. Swedish Imports Maintenance,Inc., 319 N.C. 243, 253, 354 S.E.2d 477, 483 (1987). The medical evidence of record fails to establish a causal relationship between Plaintiff's compensable occupational diseases and his psychological condition, and thus Plaintiff's depression is not compensable. *Page 8 
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay Plaintiff temporary total disability compensation at the weekly compensation rate of $375.01 until further Order of the Commission.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's compensable medical conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from all future sums due Plaintiff and paid directly to Plaintiff's counsel by deducting every fourth compensation check due Plaintiff from the filing of the Deputy Commissioner's Opinion and Award.
4. Plaintiff's claim for medical and other compensation for his psychological condition is DENIED.
5. Defendants shall pay the costs.
This the 1st day of March, 2010.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING: *Page 9 
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1